IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 118-055 |
| | * | |
| MAGNOLIA VALLEY PLANTATION, LLC; | * | |
| MAGNOLIA VALLEY, LLC; and | * | |
| MAGNOLIA HILLS, LLC, | * | |
| | * | |
| Defendants. | * | |

## O R D E R

Before the Court is Plaintiff's motion for relief from Local Rule 83.4(c) (Doc. 4) and Plaintiff's motion to enter the Consent Decree (Doc. 5). The Court **GRANTS** both motions. (Docs. 4, 5.)

Under Local Rule 83.4(c), Rachael Amy Kamons, counsel for Plaintiff, shall be relieved from being a member of the Southern District of Georgia's bar. The Court **DIRECTS** the Clerk to make the appropriate notations to the record.

By signing the Consent Decree (Doc. 3-1), the Court **APPROVES** and **ADOPTS** it as a final judgment. Although the Court will retain jurisdiction for the duration of the Consent Decree to enforce or modify its terms and resolve disputes arising under it, the Court **DIRECTS** the Clerk to **ADMINISTRATIVELY CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this _19th_ day of November, 2018.

J. RANDAL HALL, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 1:18-cv-00055-JRH-BKE |
| | ) | |
| MAGNOLIA VALLEY PLANTATION, LLC, | ) | |
| MAGNOLIA VALLEY, LLC, AND | ) | |
| MAGNOLIA HILLS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## CONSENT DECREE

# TABLE OF CONTENTS

I.     JURISDICTION AND VENUE ........................................................................ 3

II.    APPLICABILITY ............................................................................................. 4

III.   DEFINITIONS ................................................................................................. 5

IV.   PAYMENT REQUIREMENTS ...................................................................... 12

V.    CIVIL PENALTY ........................................................................................... 13

VI.   COMPLIANCE REQUIREMENTS ............................................................... 14

VII.  REPORTING REQUIREMENTS ................................................................... 28

VIII. STIPULATED PENALTIES ........................................................................... 31

IX.   FORCE MAJEURE ........................................................................................ 37

X.    DISPUTE RESOLUTION .............................................................................. 39

XI.   INFORMATION COLLECTION AND RETENTION .................................. 42

XII.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ....................... 44

XIII. COSTS ........................................................................................................... 45

XIV. NOTICES ....................................................................................................... 46

XV.  EFFECTIVE DATE ........................................................................................ 47

XVI. RETENTION OF JURISDICTION ............................................................... 47

XVII. MODIFICATION .......................................................................................... 47

XVIII. TERMINATION ............................................................................................ 48

XIX. PUBLIC PARTICIPATION .......................................................................... 48

XX.  SIGNATORIES/SERVICE ............................................................................ 49

XXI. INTEGRATION ............................................................................................. 49

XXII. FINAL JUDGMENT ..................................................................................... 50

XXIII. APPENDICES ............................................................................................... 50

WHEREAS, Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendants violated Section 301 of the Clean Water Act ("CWA"), 33 U.S.C. § 1311, and terms and conditions of applicable General Permits[1] issued by the State of Georgia pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, and seeking injunctive relief and civil penalties pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d).

WHEREAS, the allegations in the Complaint concern Defendants' activities at a residential development site covering the Magnolia Valley Plantation and Magnolia Hills (a/k/a Magnolia Valley) developments, located off of William Few Parkway, at approximately 33.549° N latitude by 82.205° W longitude, in Evans, Columbia County, Georgia, and as described in Appendix A (hereafter, the "Site").

WHEREAS, the EPA is charged with the statutory duty of enforcing the CWA pursuant to 33 U.S.C. § 1251 *et seq.* and the regulations promulgated pursuant thereto.

WHEREAS, each of Defendants Magnolia Valley Plantation, Magnolia Valley and Magnolia Hills is a limited liability company organized and existing under the laws of the State of Georgia with a principal place of business located in Evans, Georgia.

---

[1] Plaintiff alleges that Defendants were in violation of the Authorization to Discharge under the National Pollutant Discharge Elimination System Storm Water Discharges Associated with Construction Activity for Common Developments (Permit No. GAR100003), effective August 1, 2008 ("2008 General Permit") and the reissued Authorization to Discharge under the National Pollutant Discharge Elimination System Storm Water Discharges Associated with Construction Activity for Common Developments (Permit No. GAR100003), effective September 24, 2013 ("2013 General Permit") (together, "General Permits").

WHEREAS, Aaron W. Sullivan, Jr. (hereafter "Sullivan"), a signatory to this Consent Decree, is the president, managing member, owner, operator, and/or general contractor of Defendants Magnolia Valley Plantation, Magnolia Valley and Magnolia Hills.

WHEREAS, the Complaint alleges that at all relevant times, one or more of the Defendants owned, operated, or otherwise controlled the Site and/or otherwise financed or controlled all activities relevant to the Complaint that occurred on the Site.

WHEREAS, GEPD issued General Permit No. GAR100003 ("Authorization to Discharge Under The National Pollutant Discharge Elimination System Storm Water Discharges Associated With Construction Activity For Common Developments") on August 1, 2008 (hereafter, the "2008 General Permit"). The 2008 General Permit had an expiration date of July 31, 2013; however, pursuant to General Permit Part V.B. (Continuation of the Expired General Permit), the permit continued "in full force and effect" until a new permit took effect.

WHEREAS, GEPD re-issued General Permit No. GAR100003 on September 24, 2013 (hereafter, the "2013 General Permit"). The 2013 General Permit is set to expire on July 31, 2018.

WHEREAS, on February 14, 2011, Defendants submitted a notice of intent ("NOI") for coverage under the 2003 General Permit for the Magnolia Hills development, which includes the southeastern portion of the Site (hereafter "February 2011 Magnolia Hills NOI").

WHEREAS, on September 29, 2011, Defendants submitted a notice of intent for coverage under the 2008 General Permit for the Magnolia Plantation development (hereafter "September 2011 Magnolia Valley Plantation NOI"), which includes the northern and southwestern portions of the Site.

WHEREAS, on December 23, 2013, Defendants submitted a notice of intent for coverage under the reissued 2013 General Permit for the Magnolia Valley (f/k/a Magnolia Hills) development (hereafter "December 2013 Magnolia Hills NOI").

WHEREAS, on December 23, 2013, Defendants submitted a notice of intent for coverage under the reissued 2013 General Permit for the Magnolia Plantation development (a/k/a Magnolia Valley Plantation) (hereafter "December 2013 Magnolia Valley Plantation NOI").

WHEREAS, Defendants do not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

WHEREAS, Defendants have sold portions of the Site.

WHEREAS, although Defendants have not yet filed Notices of Termination ("NOTs") for all portions of the Site, Defendants have ceased, and do not intend to resume, Construction Activity (as defined herein) on all portions of the Site.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

I.      JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 309(b) of the Clean Water Act ("CWA" or "Act"), 33 U.S.C. § 1319(b), and over the Parties. Venue lies in this District pursuant to 33 U.S.C. § 1319(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because Defendants Magnolia

Valley Plantation, Magnolia Valley and Magnolia Hills are incorporated and/or conduct business in this District, because the violations occurred in this District, and because Sullivan resides and/or conducts business in this District. For purposes of this Decree, or any action to enforce this Decree, Magnolia Affiliates consent to the Court's jurisdiction over this Decree and any such action and over Magnolia Affiliates, and they consent to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to Section 309 of the CWA.

## II.      APPLICABILITY

3.      Parties Bound. The obligations of this Consent Decree apply to and are binding upon the United States, and upon all Magnolia Affiliates. This Consent Decree shall not be binding on any purchaser of real property who is not an entity otherwise covered by this Consent Decree.

4.      Responsibility for Acts of Others.

      a.      Magnolia Affiliates shall be responsible for compliance with Storm Water Requirements at the Site and any Additional Site, except as set forth in Subparagraph 4.b.

      b.      If the Site or any Additional Site (or portion thereof) is transferred to an entity that is not a Magnolia Affiliate, Magnolia Affiliates shall no longer be responsible for compliance with Storm Water Requirements and therefore not subject to the stipulated penalties at the transferred site (or portion thereof) except to the extent that Magnolia Affiliates remain responsible under the Applicable Permit for the site (or portion thereof). Magnolia Affiliates shall not be responsible for BMPs or Construction

Activity by Secondary Permittees nor subject to stipulated penalties for Secondary Permittees' permit noncompliance.

    c.    In any action to enforce this Consent Decree, Magnolia Affiliates shall not assert as a defense the failure by any officer, employee, agent, or contractors to take any actions necessary to comply with the provisions of this Consent Decree, unless Magnolia Affiliates establish that the failure resulted from a Force Majeure event defined in Section IX.

5.    <u>Transfer of Ownership.</u> No transfer of ownership or operation of any portion of the Site, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Magnolia Affiliates of their obligation to ensure that the terms of the Decree are implemented, except as set forth in Subparagraph 4.b.

6.    Magnolia Affiliates shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Magnolia Affiliates shall condition any such contract regarding the Site and/or any Additional Site upon performance of the work in conformity with the terms of this Consent Decree.

7.    Magnolia Affiliates shall not alter their general corporate structure or enter into agreements with third parties for the primary purpose of directly or indirectly circumventing the requirements of this Consent Decree.

## III.    DEFINITIONS

8.    Terms used in this Consent Decree that are defined in the CWA or in regulations promulgated pursuant to the CWA shall have the meanings assigned to them in the CWA or such

regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Act" or "Clean Water Act" shall mean the Federal Water Pollution Control Act, as amended, 33 U.S.C. §§ 1251-1387.

b.    "Additional Site" shall mean any location other than the Site for which any Magnolia Affiliate has executed a contract (verbally or in writing) involving the Magnolia Affiliate's Construction Activity and/or any location for which one or more Magnolia Affiliate either has (1) operational control over construction plans and specifications, including the ability to make modifications to those plans and specifications; or (2) day-to day operational control of those activities at a project which are necessary to ensure compliance with the Storm Water Requirements for the site or other permit conditions (*e.g.*, they are authorized to direct workers at a site to carry out activities required by the Storm Water Requirements or to comply with other Permit conditions) and at which there is or will be Construction Activity impacting at least one acre or which is otherwise subject to the National Pollutant Discharge Elimination System ("NPDES") storm water construction regulations set forth at 40 C.F.R. § 122.26(b)(14)(x) or 40 C.F.R. § 122.26(b)(15). "Additional Site" does not include the "Exempt Site," as defined below.

c.    "Applicable Manual" shall mean the version of the Manual (as defined below) that is in effect at the time of the compliance activity, including but not limited to: (i) the 2016 Edition of the Manual, approved on November 19, 2015, and effective January 1, 2016; and (ii) any subsequent Manual edition published by the Georgia Soil and Water Conservation Committee or successor entity.

d.     "Applicable Permit(s)" shall mean (i) the 2008 General Permit (as defined below), (ii) the 2013 General Permit (as defined below), or (iii) any individual NPDES permit issued by EPA or an authorized governmental entity regarding storm water discharges associated with Construction Activities pursuant to 33 U.S.C. § 1342 with which Magnolia Affiliates must comply. This term applies to any such permit in its current form or as it may be amended in the future.

e.     "Best Management Practices" or "BMPs" shall mean the same as the term is defined in the Applicable Permit. If the term is not defined in the permit, then "BMP" shall mean the same as the term is defined in 40 C.F.R. § 122.2 in its form as of the Effective Date or as it may be amended in the future. As of the Effective Date, that definition is "schedules of activities, prohibitions of practices, maintenance procedures, and other management practices to prevent or reduce the pollution of 'waters of the United States.' BMPs also include treatment requirements, operating procedures, and practices to control . . . site runoff, spillage or leaks, sludge or waste disposal, or drainage from raw material storage."

f.     "Calendar Quarter" shall mean the three (3) Month periods ending on March 31, June 30, September 30, and December 31.

g.     "Complaint" shall mean the complaint filed by the United States in this action.

h.     "Consent Decree" or "Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXIII).

i.     "Construction Activity" means the disturbance of soils associated with clearing, grading, excavating, filling of land, or other similar activities which may result in soil erosion and which is subject to the National Pollutant Discharge Elimination

System ("NPDES") storm water construction regulations set forth at 40 C.F.R. § 122.26(b)(14)(x) or 40 C.F.R. § 122.26(b)(15).

j.    "Contractor(s)" shall mean any of the Magnolia Affiliates' consultants, contractors or sub-contractors at a Site or Additional Site, including any employees of the consultants, contractors or subcontractors working at a Site.

k.    "Corrective Action" shall mean any action taken to (1) repair, modify, or replace any storm water control used at a Site or Additional Site; (2) clean up and dispose of spills, releases or other deposits found on a Site; or (3) remedy a permit violation.

l.    The "County" shall mean Columbia County, Georgia.

m.    "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day.

n.    "Defendants" shall mean Magnolia Valley Plantation, LLC, Magnolia Valley, LLC, and Magnolia Hills, LLC.

o.    "Effective Date" shall have the definition provided in Section XV.

p.    "Escrow Account" shall have the meaning provided in Section IV.

q.    "Exempt Site" shall mean one parcel of real property and/or land (1) which is owned or operated in whole or in part by Mr. Sullivan in his personal capacity (*i.e.*, not in his capacity as a member of any Magnolia Affiliates entity and not jointly with any Magnolia Affiliates entity) continuously either (i) from the Effective Date of this Consent Decree or (ii) from the date of purchase of the

property or land, whichever occurs later, until termination of this Consent Decree; (2) which has or will have Construction Activity, subject to NPDES storm water regulations set forth at 40 C.F.R. § 122.26(b)(14)(x) or 40 C.F.R. § 122.26(b)(15), impacting no more than 10 acres in size; (3) which has or will have no more than two residential homes, not including non-dwelling outbuildings such as a barn or a garage, built thereon; and (4) for which Mr. Sullivan has complied with the obligation to notify EPA as set forth in Paragraph 30 of this Decree, if applicable. For purposes of this Consent Decree, there shall only be one Exempt Site, which shall be designated upon notification to the United States in accordance with Section XIV (Notices).

r.  "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

s.  "GEPD" shall mean the State of Georgia Environmental Protection Division.

t.  "Independent Third Party Verifier" or "Verifier" shall mean a person or company which meets the qualifications set forth in Paragraph 21.

u.  "Magnolia Affiliates" shall mean Defendants, Sullivan, any current or future entity over which any Defendant and/or its successors or assigns has either (a) ownership and operational control or (b) day to day operational control over Construction Activity, and/or any current or future entity over which Sullivan has either (a) ownership and operational control or (b) day to day operational control over Construction Activity.

v.  "Manual" shall mean the Manual for Erosion and Sediment Control in Georgia, as prepared by the Georgia Soil and Water Conservation Commission.

9

w.     "Month" shall mean one (1) calendar month running from the numbered day to the same numbered day of the following calendar month, regardless of whether the particular month has 28, 29, 30 or 31 days. In the event a triggered event would occur on a day of the month which does not exist (for example, on February 30), then the event shall be due on the first day of the following month (for example, March 1).

x.     "Notice of Intent" or "NOI" shall mean a request for coverage under an Applicable Permit.

y.     "Notice of Termination" or "NOT" shall mean notification that coverage under an Applicable Permit is ready for termination.

z.     "NPDES" shall mean the National Pollutant Discharge Elimination System, created pursuant to the CWA, 33 U.S.C. §§ 1251 *et seq.*

aa.    "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

bb.    "Parties" shall mean the United States, Defendants, and Magnolia Affiliates.

cc.    "Responsive Action" shall mean an action taken or that is necessary to be taken to achieve or maintain compliance with Storm Water Requirements, including Corrective Actions.

dd.    "Section" shall mean a portion of this Decree identified by a Roman numeral.

ee.    "Site" shall mean the residential development site covering the Magnolia Valley Plantation and Magnolia Hills (a/k/a Magnolia Valley) developments, located off of William Few Parkway, at approximately 33.549 N latitude by 82.205 W longitude, in Evans, Columbia County, Georgia, and as described in Appendix A.

ff.    "State" shall mean the State of Georgia.

gg.   "Storm Water Compliance Manager" shall mean a person or individual who is certified to perform inspections under the Applicable Permit and is retained by Magnolia Affiliates for any Additional Site to perform compliance inspections as required by the Permit and Section VI (Compliance Requirements) of this Consent Decree. This Decree does not require retention of a Storm Water Compliance Manager for the Site.

hh.   "Storm Water Requirements" shall mean the terms and conditions of this Decree, the applicable provisions of the CWA, applicable implementing regulations, the Applicable Permit, the laws and regulations that apply, interpret, or enforce the Applicable Permit, and the Applicable Manual, in their form as of the Effective Date or as any of the foregoing requirements may be amended in the future, for the Site and/or any Additional Site.

ii.   "SWPPP" shall mean a Storm Water Pollution Prevention Plan or other plan such as an Erosion, Sedimentation and Pollution Control Plan for controlling pollutants in storm water discharges from the Site or Additional Site that meets the requirements of Paragraph 16 (SWPPP) and/or Paragraph 17 (SWPPP Updates).

jj.   "United States" shall mean the United States of America, acting on behalf of EPA.

kk.   The "2003 General Permit" shall mean General Permit No. GAR100003, "Authorization to Discharge Under The National Pollutant Discharge Elimination System Storm Water Discharges Associated With Construction Activity For Common Developments" issued on August 13, 2003. The 2003 General Permit had an expiration date of July 31, 2008; however, pursuant to General Permit Part

V.B. (Continuation of the Expired General Permit), the permit continued "in full force and effect" until a new permit took effect.

ll.    The "2008 General Permit" shall mean General Permit No. GAR100003, "Authorization to Discharge Under The National Pollutant Discharge Elimination System Storm Water Discharges Associated With Construction Activity For Common Developments," which was reissued on August 1, 2008. The 2008 General Permit had an expiration date of July 31, 2013; however, pursuant to General Permit Part V.B. (Continuation of the Expired General Permit), the permit continued "in full force and effect" until a new permit took effect.

mm.    The "2013 General Permit" shall mean General Permit No. GAR100003, "Authorization to Discharge Under The National Pollutant Discharge Elimination System Storm Water Discharges Associated With Construction Activity For Common Developments," which was reissued on September 23, 2013. The 2013 General Permit is set to expire on July 31, 2018.

## IV.    PAYMENT REQUIREMENTS

9.    Within 14 Days after lodging this Consent Decree, Magnolia Affiliates shall establish an interest-bearing escrow account for the benefit of the United States (hereafter "Escrow Account"). The Escrow Account shall provide that the funds placed therein are specifically and irrevocably reserved for payment of the civil penalty set forth in Section V and to purchase wetlands credits as set forth in Paragraph 23.

10.    Magnolia Affiliates shall send notice of the establishment of the Escrow Account (i) to the United States via email or regular mail in accordance with Section XIV; and (ii) to EPA Region 4 in accordance with Section XIV. Such notice shall provide proof of account

establishment and list the account information, and shall reference the civil action number and DOJ case number 90-5-1-1-11410.

## V.    CIVIL PENALTY

11.    Within 20 Days after lodging of this Consent Decree, Magnolia Affiliates shall deposit the sum of $45,000 into the Escrow Account to be used to pay the civil penalty as described in paragraph 13 below.

12.    Within 30 Days after the Effective Date, Magnolia Affiliates shall pay from the Escrow Account the civil penalty amount specified in the preceding paragraph, together with any interest that has accrued in the Escrow Account.

13.    Magnolia Affiliates shall pay the civil penalty due at pay.gov or via FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with instructions provided to Magnolia Affiliates by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the Southern District of Georgia after the Effective Date. The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Magnolia Affiliates shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

Aaron W. Sullivan, Jr., P.O. Box 1550, Evans, GA 30809
Telephone: (706) 830-1888; E-mail: aaronwsullivan@att.net

on behalf of Magnolia Affiliates. Magnolia Affiliates may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XIV (Notices).

At the time of payment, Magnolia Affiliates shall send notice that payment has been made: (i) to EPA via email at cinwd_acctsreceivable@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 W. Martin Luther King Drive, Cincinnati, Ohio 45268; (ii) to the

13

United States via email or regular mail in accordance with Section XIV; and (iii) to EPA Region 4 in accordance with Section XIV. Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. Magnolia Valley Plantation, LLC, et al.* and shall reference the civil action number, CDCS Number and DOJ case number 90-5-1-1-11410.

14.     Magnolia Affiliates shall not deduct any penalties paid under this Decree pursuant to this Section or Section VIII (Stipulated Penalties) in calculating their federal income taxes.

## VI.     COMPLIANCE REQUIREMENTS

15.     Magnolia Affiliates shall comply with all applicable requirements of the Act, regulations issued pursuant to the Act, and all practices, standards, and limits contained in all Applicable Permits issued to Magnolia Affiliates.

16.     <u>SWPPP.</u>

   a.     All SWPPPs and SWPPP amendments shall comply with all applicable Storm Water Requirements.

   b.     Prior to Magnolia Affiliates undertaking any Construction Activity at an Additional Site, Magnolia Affiliates shall prepare a Site-specific SWPPP for the Additional Site, in accordance with and in compliance with the applicable Storm Water Requirements.

   c.     Magnolia Affiliates shall modify the SWPPP as necessary under the requirements of the applicable Storm Water Requirements. If at any time the SWPPP is not in compliance, Magnolia Affiliates shall amend the SWPPP as necessary to bring it into compliance. In addition, Magnolia

Affiliates shall ensure that the SWPPP for each Additional Site meets the criteria set forth in the Applicable Permit.

17.     SWPPP Updates. For each Additional Site, Magnolia Affiliates shall revise, update and supplement the SWPPP used for that Additional Site:

     a.     If there is a change in design, construction method, operation or maintenance at the Additional Site that has or may have an effect on the discharge of pollutants to surface waters including wetlands;

     b.     In the event of a Repeated BMP Failure, in accordance with Paragraph 18 (BMPs), below; or

     c.     To record any changes to the BMPs that result from the inspections required by Paragraph 20 (Compliance Inspections), or as otherwise identified.

     d.     The SWPPP, and any modifications thereto, shall be prepared by a Storm Water Compliance Manager and signed in accordance with the requirements of the applicable storm water regulations or Applicable Permit. The SWPPP preparer shall certify on the SWPPP that it was developed using the criteria set forth in the Applicable Permit.

18.     BMPs.

     a.     Magnolia Affiliates shall implement all BMPs as required by the SWPPP and the applicable Storm Water Requirements.

     b.     If Magnolia Affiliates identifies during a self-inspection required by the Applicable Permit a missing, ineffective, or breached BMP for which Magnolia Affiliates is responsible under the Applicable Permit, Magnolia

Affiliates shall (i) report the issue and any Responsive Actions in the applicable Quarterly Report in accordance with Section VII (Reporting Requirements); (ii) correct the missing, ineffective or breached BMP within the time required by and otherwise in accordance with the terms of the Applicable Permit and SWPPP, but no later than seven (7) Days after identification; (iii) install or modify all required additional or different BMPs in accordance with the terms of the Applicable Permit and SWPPP; and (iv) modify the SWPPP to reflect those changes in accordance with the terms of the Applicable Permit and SWPPP.

c. Magnolia Affiliates shall verify whether all identified correction and/or maintenance activities have been performed and, for each Additional Site, shall so indicate during the next inspection conducted pursuant to Paragraph 20 (Compliance Inspections) by initialing the Site Inspection Form (Appendix B) on or near the corresponding entry.

19. <u>Designation of Storm Water Compliance Manager.</u>

a. No later than five (5) Days after the Effective Date or fifteen (15) Days prior to Magnolia Affiliates' commencement of Construction Activity, whichever is later, Magnolia Affiliates shall submit in writing a notice to the United States identifying for each Additional Site one employee or Contractor who will serve as the Storm Water Compliance Manager to oversee Additional Site storm water compliance activities and perform compliance inspections as required by the Permit and Paragraph 20 below. The Storm Water Compliance Manager shall (i) have successfully

completed the appropriate certification course approved by the State Soil and Water Conservation Commission; (ii) have the authority and responsibility to manage all Additional Site activities necessary to meet the Storm Water Requirements at the Additional Site; (iii) have the authority to order any person to stop any work at the Additional Site when necessary to comply with the Storm Water Requirements; (iv) ensure that a SWPPP has been completed and complies with the Applicable Permit and the Storm Water Requirements prior to commencement of Construction Activity at the Additional Site; (v) have the authority and responsibility to certify and cause the Additional Site's SWPPP to be amended as necessary; and (vi) develop and submit to EPA the Quarterly Reports in accordance with Section VII (Reporting Requirements).

b.    The Storm Water Compliance Manager shall maintain his or her certification as current, pursuant to the applicable certification requirements.

c.    Magnolia Affiliates may retain the same person or individual to serve as Storm Water Compliance Manager for multiple Additional Sites.

d.    Magnolia Affiliates may change the Storm Water Compliance Manager for any Additional Site by providing EPA with written notice of the change pursuant to Section XIV and submitting evidence that the new person selected meets the criteria set forth in this Paragraph.

e.    Notice of the Storm Water Compliance Manager's Email Address and Phone Number. Magnolia Affiliates shall post a conspicuous notice (i)

providing the email address and telephone number of Magnolia Affiliates'
Storm Water Compliance Manager in their construction office or, in the
absence of a construction office, in another conspicuous location at the
Additional Site, and (ii) authorizing all employees and Contractors to
contact the Storm Water Compliance Manager at the Additional Site with
any questions or to report problems relating to sediment and erosion
control at any Additional Site. If Magnolia Affiliates' designated Storm
Water Compliance Manager is not available to answer the phone at any
time, Magnolia Affiliates shall ensure that a person or machine shall be
available to answer or record a message and that those messages are
retrieved and addressed within a reasonable time. Likewise, Magnolia
Affiliates shall ensure that emails are retrieved and addressed within a
reasonable time.

20.    Compliance Inspections for Additional Sites.

a.    At a minimum, commencing no later than the date required by the
Applicable Permit, or 30 Days after the Effective Date, whichever is
earlier, a Storm Water Compliance Manager shall inspect each Additional
Site at least at the frequency required by the Applicable Permit but not less
frequently than every seven (7) Days and within twenty-four (24) hours of
a 0.5 inch rain event.

b.    Site Inspection: For each Additional Site, the Storm Water Compliance
Manager shall inspect the entire Additional Site to:

(1)        determine whether all Construction Activity for the Additional Site is being conducted in accordance with the requirements of the SWPPP and the applicable Storm Water Requirements;

(2)        determine whether the SWPPP for the Additional Site is being updated and implemented in accordance with the applicable Storm Water Requirements;

(3)        identify and record all repairs, maintenance, modifications or other work made to, or needed for, existing BMPs at the Additional Site to ensure that they are maintained in effective operating condition;

(4)        identify and record BMPs which need to be repaired, maintained, modified and/or added to prevent any discharges of pollutants from the Additional Site into waters of the United States, including wetlands; and

(5)        identify and record any discharge of pollutants from the Additional Site into waters of the United States, including wetlands.

c.        The Storm Water Compliance Manager shall record each Site Inspection on the Site Inspection Form (Appendix B) that shall be certified in accordance with the terms of the Applicable Permit. Magnolia Affiliates shall submit the Site Inspection Forms with their Quarterly Reports, in accordance with Section VII (Reporting Requirements).

21.    <u>Third-Party Oversight for Additional Sites.</u> The provisions of this paragraph shall apply to all Additional Sites for which Magnolia Affiliates is engaged in Construction Activity, where the Additional Site, after development and through the date of termination of this Consent

Decree in accordance with Section XVIII, will contain at least one residential and/or commercial unit not owned by Magnolia Affiliates. Consistent with the aforementioned provisions, Mr. Sullivan's personal property and land that is not sold during the time frame of this Consent Decree is exempt from the Third-Party Oversight requirements of this paragraph:

a. Magnolia Affiliates will retain, at their expense, an Independent Third Party Verifier to conduct a comprehensive verification of Magnolia Affiliates' compliance with the requirements set forth in this Section VI (Compliance Requirements) of the Consent Decree for each Additional Site. In addition, the Independent Third Party Verifier shall, at Magnolia Affiliates' expense, perform the tasks set forth in this Paragraph 21.

b. Magnolia Affiliates shall require that the Verifier act independently and objectively when performing third-party services set forth in this Paragraph 21. Magnolia Affiliates shall provide the Verifier with full access to all Additional Sites and provide or otherwise make available any necessary personnel, documents, and databases to fully perform all activities and services required under this Paragraph 21.

c. At least fourteen (14) Days prior to commencement of Construction Activities at each Additional Site, Magnolia Affiliates shall submit to the United States a list of candidates to serve as Independent Third Party Verifier. The list shall include at least two candidates. Magnolia Affiliates shall certify that each candidate meets the conditions set forth in Subparagraphs 21.d - 21.g below; however, the United States, in its unreviewable exercise of discretion may waive one or more of these

requirements. If requested, Magnolia Affiliates shall provide resumes, biographical information, and other relevant material concerning the candidates, including information on the relationship between Magnolia Affiliates and the candidates.

d. The Independent Third Party Verifier has demonstrated experience in compliance with the Applicable Permits.

e. The Independent Third Party Verifier has not conducted research, development, design, construction, financial, engineering, legal, consulting nor other advisory services for Magnolia Affiliates.

f. The Independent Third Party Verifier was not involved in the development of the Site or any Additional Sites.

g. The Independent Third Party Verifier will not provide any other commercial, business or voluntary services to Magnolia Affiliates for a period of at least three (3) years following the termination of this Consent Decree.

h. The Magnolia Affiliates will not provide future employment to any of the Verifier's personnel who conducted or otherwise participated in the Third Party Verification for a period of at least three (3) years following the termination of this Consent Decree.

i. The United States will notify Magnolia Affiliates in writing whether it approves of a proposed Independent Third Party Verifier. Within fourteen (14) Days of the United States' approval, Magnolia Affiliates shall retain such Verifier to perform the verification activities set forth in this Section

VI (Compliance Requirements) of this Consent Decree for each Additional Site. Magnolia Affiliates shall ensure that all personnel who conduct or otherwise participate in verification activities on behalf of the Independent Third Party Verifier shall certify that they satisfy the conditions set forth in Subparagraphs 21.d - 21.g above before receiving any payment from Magnolia Affiliates.

j.     If the United States rejects a proposed Independent Third Party Verifier, within fourteen (14) Days of receipt of the United States' notification, Magnolia Affiliates shall submit to the United States for approval another proposed Verifier that meets the qualifications set forth in Subparagraphs 21.d - 21.g above. The United States will review the proposed replacement in accordance with Subparagraph 21.i. Nothing in this Subparagraph precludes the United States from assessing stipulated penalties for missed verification deadlines associated with the need to replace an Independent Third Party Verifier unless Magnolia Affiliates successfully assert that the inability of the Verifier to perform the verification activities as required was a Force Majeure event in accordance Section IX of this Consent Decree.

k.     Magnolia Affiliates shall ensure that their contract with the Verifier explicitly requires the Verifier to review and report to EPA on the following requirements at each of Magnolia Affiliates' Additional Sites at least once per Calendar Quarter. The report ("Verification Report") shall be submitted concurrently to EPA and Magnolia Affiliates within 1 Month

after the end of each Calendar Quarter and may be reviewed by EPA to assess Magnolia Affiliates' compliance with this Consent Decree and the Applicable Permits.

    (1)    All BMPs set forth in the applicable SWPPP are installed (to be documented photographically by the Verifier);

    (2)    All BMPs at the Additional Site are being evaluated by Magnolia Affiliates as required by this Section VI (Compliance Requirements);

    (3)    BMP failures are being properly identified, reported and addressed by Magnolia Affiliates, as required by this Section VI (Compliance Requirements) and the Applicable Permit;

    (4)    Stream impacts are being properly identified, reported and addressed by Magnolia Affiliates, as required by this Section VI (Compliance Requirements) and the Applicable Permit;

    (5)    Compliance with the Applicable Permit is being properly assessed and reported to EPA by Magnolia Affiliates;

    (6)    Site Inspection Forms are properly completed by the Storm Water Compliance Manager and contain accurate information, in accordance with Paragraph 20 (Compliance Inspections).

l.    In addition to reporting on the conditions set forth in Subparagraph 21.k above, Magnolia Affiliates shall ensure through their contract with the Verifier that the Verification Report meets with the following requirements:

(1)     Magnolia Affiliates shall ensure that the Verifier does not share any draft or preliminary audit findings or reports with Magnolia Affiliates in any format (electronic, paper, or verbal).

(2)     Magnolia Affiliates shall ensure that the Verifier does not share its audit conclusions with Magnolia Affiliates until the Verifier submits its Verification Report(s) to EPA.

(3)     The Verification Report submitted to EPA shall include all findings, conclusions, monitoring results and other observations of the Verifier.

(4)     The Verification Report shall include copies of all documents reviewed and identify all personnel interviewed in support of the Report.

(5)     Magnolia Affiliates shall require the Verifier to include in the Verification Report submitted to EPA a certification that the Verifier has remained in compliance with all of the conditions set forth in this Paragraph 21, and will continue to follow such conditions until three years after the final Verification Report is submitted.

(6)     The Verification Report, or any information developed by or any findings of the Verifier, shall not be subject to any privilege or protection.

22.     <u>Availability of Permit and SWPPP.</u> During working hours on all Business Days, Magnolia Affiliates shall ensure that a copy of the Applicable Permit and SWPPP, including all

SWPPP modifications, are available at the Additional Site for review by any Contractor or employee of Magnolia Affiliates, as well as by any local, state, or federal inspector in accordance with Paragraph 65 (Right of Entry) or any other permit, law, or regulation then in effect. If there is no construction office onsite, the SWPPP, including all modifications, shall be kept at a nearby location where it can be easily accessed upon request, and the location of the SWPPP shall be posted at the Additional Site.

23. <u>Wetlands Credits</u>.

    a. Within 20 Days after lodging of this Consent Decree, Magnolia Affiliates shall deposit the sum of $60,000 into the Escrow Account, to be used to purchase wetlands credits, as described in subparagraph 23.b, below.

    b. Within thirty (30) Days after the Effective Date of this Consent Decree, Magnolia Affiliates shall pay from the Escrow Account the $60,000 specified in subparagraph 23.a to purchase wetlands credits in accordance with subparagraph 23.c.

    c. The wetlands credits shall be purchased from a mitigation bank approved by the U.S. Army Corps of Engineers in the primary service area of the Site, or in the secondary service area if insufficient credits are available in the primary service area, or In-Lieu-Fee funding if insufficient credits are available at both the primary service area and secondary service area. Upon purchasing the credits and/or In-Lieu-Fee funding as required by this Consent Decree, Magnolia Affiliates shall provide proof of purchase to DOJ and EPA at the addresses specified in Section XIV (Notices) of this Consent Decree.

d.      As of the Effective Date of this Consent Decree, Nationwide Permit 32, 77 Fed. Reg. 10,184 (Feb. 21, 2012), authorizes any fill that was discharged at the Site to remain in place, subject to the conditions provided in Nationwide Permit 32.

e.      Except as in accordance with this Consent Decree, Defendants and their agents, successors and assigns and any Magnolia Affiliate are enjoined from discharging any pollutant into waters of the United States, unless such discharge complies with the provisions of the CWA and its implementing regulations.

24.      <u>Approval of Deliverables</u>. After review of any plan, report, or other item that is required to be submitted pursuant to this Consent Decree, EPA shall in writing: (a) approve the submission; (b) approve the submission upon specified conditions; (c) approve part of the submission and disapprove the remainder; or (d) disapprove the submission.

25.      If the submission is approved pursuant to Paragraph 24, Magnolia Affiliates shall take all actions required by the plan, report, or other document, in accordance with the schedules and requirements of the plan, report, or other document, as approved. If the submission is conditionally approved or approved only in part pursuant to Paragraph 24(b) or (c), Magnolia Affiliates shall, upon written direction from EPA, take all actions required by the approved plan, report, or other item that EPA determines are technically severable from any disapproved portions, subject to Magnolia Affiliates' right to dispute only the specified conditions or the disapproved portions, under Section X (Dispute Resolution).

26.      If the submission is disapproved in whole or in part pursuant to Paragraph 24(c) or (d), Magnolia Affiliates shall, within forty-five (45) days or such other time as the Parties

agree to in writing, correct all deficiencies and resubmit the plan, report, or other item, or disapproved portion thereof, for approval, in accordance with the preceding Paragraphs. If the resubmission is approved in whole or in part, Magnolia Affiliates shall proceed in accordance with the preceding Paragraph.

27.     If a resubmitted plan, report, or other item, or portion thereof, is disapproved in whole or in part, EPA may again require Magnolia Affiliates to correct any deficiencies, in accordance with the preceding Paragraphs, or may itself correct any deficiencies, subject to Magnolia Affiliates' right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

28.     Any stipulated penalties applicable to the original submission, as provided in Section VIII, shall accrue during the forty-five (45) Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved in whole or in part; provided that, if the original submission was so deficient as to constitute a material breach of Magnolia Affiliates' obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission.

29.     Permits. Where any compliance obligation under this Section requires Magnolia Affiliates to obtain a federal, state, or local permit or approval, Magnolia Affiliates shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Magnolia Affiliates may seek relief under the provisions of Section IX (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Magnolia Affiliates have submitted timely and complete applications and have taken all other actions necessary to obtain all such permits or approvals.

30.     Notification of Permit Coverage for the Exempt Site. Where a federal, state, or local permit or approval is required for an Exempt Site, Mr. Sullivan shall provide EPA with notice of the permit or approval request and any follow-up communications in accordance with Section XIV (Notices).

## VII.     REPORTING REQUIREMENTS

31.     Site Reports. Beginning on the Effective Date of this Consent Decree, Magnolia Affiliates shall submit electronically in accordance with Section XIV (Notices) to EPA a copy of all reports required to be submitted to GEPD and/or the County for the Site pursuant to the Applicable Permit.

32.     Quarterly Reports. Beginning one (1) Month after the first Calendar Quarter following the Effective Date of this Consent Decree, and one (1) Month after each Calendar Quarter thereafter until termination of this Decree pursuant to Section XVIII, Magnolia Affiliates shall submit electronically in accordance with Section XIV (Notices) to EPA for review and comment a Quarterly Report for each Site/Additional Site for which a Notice of Intent has been filed and a Notice of Termination either has not yet been filed or was filed during the Calendar Quarter. If no Notice of Intent has been filed for any Additional Site, then no Quarterly Reports for any Additional Site would need to be submitted.

a.     For the Site: Such Quarterly Reports shall be submitted electronically as signed e-mails and shall include:

(1)     The status of Magnolia Affiliates' Construction Activity at the Site, including completion of any milestones, problems encountered or anticipated, together with implemented or proposed

solutions, status of permit applications, and any other relevant matters;

(2)     A description of any non-compliance with the requirements of this Consent Decree and an explanation of each violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. Routine maintenance activities as specified in the Applicable Permit are not non-compliance, and descriptions thereof need not be included in the Site Quarterly Reports.

b.     For each Additional Site: Such Quarterly Reports shall be submitted as electronically signed .pdf files and shall include:

(1)     The Site Inspection Forms, in accordance with Paragraph 20 (Compliance Inspections) of this Consent Decree, for the preceding Calendar Quarter;

(2)     The status of Magnolia Affiliates' Construction Activity at the Additional Site, including completion of any milestones, problems encountered or anticipated, together with implemented or proposed solutions, status of permit applications, and any other relevant matters;

(3)     A description of any non-compliance with the requirements of this Consent Decree and an explanation of each violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.

33.     If Magnolia Affiliates violate, or have reason to believe that they may violate, any requirement of this Consent Decree, Magnolia Affiliates shall notify the United States of such violation and its likely duration, in writing, within seven (7) Days of the Day that Magnolia Affiliates first become aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation. If the cause of a violation cannot be fully explained at the time the report is due, Magnolia Affiliates shall so state in the report. Magnolia Affiliates shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within thirty (30) Days of the Day that Magnolia Affiliates become aware of the cause of the violation. Nothing in this Paragraph or the following Paragraph relieves Magnolia Affiliates of their obligation to provide the notice required by Section IX (Force Majeure).

34.     Whenever any violation of this Consent Decree or of any applicable permits or any other event affecting Magnolia Affiliates' performance under this Decree, may pose an immediate threat to the public health or welfare or the environment, Magnolia Affiliates shall notify EPA orally or by electronic transmission as soon as possible, but no later than twenty-four (24) hours after Magnolia Affiliates first knew of the violation or event. This procedure is in addition to the requirements set forth in the preceding Paragraph.

35.     All reports shall be submitted electronically to the persons designated in Section XIV (Notices).

36.     Each report submitted by Magnolia Affiliates under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system,

or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I have no personal knowledge that the information submitted is other than true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

37.     The reporting requirements of this Consent Decree do not relieve Magnolia Affiliates of any reporting obligations required by the Act or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

38.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VIII.   STIPULATED PENALTIES

39.     Magnolia Affiliates shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section IX (Force Majeure). A violation includes failing to perform any obligation required by the terms of this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

40.     <u>Late Payment of Civil Penalty.</u> If Defendants fail to pay the civil penalty required to be paid under Section V (Civil Penalty) when due, Magnolia Affiliates shall pay a stipulated penalty of $800 per Day for each Day that the payment is late.

41.     <u>Late Purchase of Wetlands Credits.</u> If Magnolia Affiliates fail to timely purchase wetlands credits as required by Paragraph 23 of the Consent Decree, Magnolia Affiliates shall pay a stipulated penalty of $800 per Day for each Day that the purchase is late.

42.    Compliance at the Site. The following stipulated penalties shall apply for the

following violations of this Consent Decree at the Site:

a.    Permits and SWPPPs. If Magnolia Affiliates fail to comply with

Paragraphs 16, 22 or 29 at the Site, they shall pay a stipulated penalty as

follows:

| Period of Noncompliance: | Penalty Per Violation Per Day: |
|---|---|
| One (1) to fifteen (15) days | $250 |
| More than fifteen (15) days | $500 |

b.    BMPs. If Magnolia Affiliates fail to implement all BMPs at the Site as

required by Subparagraph 18.a, or fail to report and correct/modify/install

missing, ineffective or breached BMPs at the Site as required by

Subparagraph 18.b, or otherwise fail to comply with Paragraph 18 at the

Site, they shall pay a stipulated penalty as follows:

| Period of Noncompliance: | Penalty Per Violation Per Day: |
|---|---|
| One (1) to fifteen (15) days | $250 |
| Sixteen (16) to thirty (30) days | $500 |
| More than thirty (30) days | $800 |

c.    Reporting. If Magnolia Affiliates fail to timely submit required Quarterly

Reports that conform to the requirements of Paragraphs 31, 32.a, 35 and

36, or fails to notify EPA in the event of a violation or anticipated

violation of the Consent Decree, in accordance with Paragraph 33, they

shall pay a stipulated penalty as follows

| Period of Noncompliance: | Penalty Per Violation Per Day: |
|---|---|

| One (1) to fifteen (15) days | $250 |
|---|---|
| More than fifteen (15) days | $500 |

43.    Compliance at Additional Sites. The following stipulated penalties shall apply for the following violations of this Consent Decree at Additional Sites:

a.    Compliance with Applicable Permits. If the discharge of any pollutant from an Additional Site to a water of the United States occurs prior to obtaining coverage as required under an Applicable Permit or in violation of an Applicable Permit, Magnolia Affiliates shall pay a stipulated penalty of $1,000 per discharge.

b.    Designation of Storm Water Compliance Manager and Independent Third Party Verifier. If Magnolia Affiliates fail to designate a Storm Water Compliance Manager for any Additional Site as required by Paragraph 19 (Designation of Storm Water Compliance Manager), or fail to retain an Independent Third Party Verifier as required by Paragraph 21 (Third-Party Oversight for Additional Sites), or otherwise fail to comply with any portion of Paragraph 19 or Paragraph 21, they shall pay a stipulated penalty as follows:

| Period of Noncompliance: | Penalty Per Violation Per Day: |
|---|---|
| One (1) to fifteen (15) days | $250 |
| More than fifteen (15) days | $500 |

c.    Permits and SWPPPs. If Magnolia Affiliates fail to obtain coverage under the Applicable Permit for an Additional Site, as required by Paragraph 29, or prepare or modify a SWPPP for an Additional Site, as required by

Paragraphs 16 and/or 17, or otherwise fail to comply with Paragraphs 16, 17, 22, or 29 at an Additional Site, they shall pay a stipulated penalty as follows:

| Period of Noncompliance: | Penalty Per Violation Per Day: |
| --- | --- |
| One (1) to fifteen (15) days | $250 |
| More than fifteen (15) days | $500 |

d.  BMPs. If Magnolia Affiliates fail to implement all BMPs at an Additional Site as required by Subparagraph 18.a, or fail to report and correct/modify/install missing, ineffective or breached BMPs at an Additional Site as required by Subparagraph 18.b, or otherwise fail to comply with Paragraph 18 at an Additional Site, they shall pay a stipulated penalty as follows:

| Period of Noncompliance: | Penalty Per Violation Per Day: |
| --- | --- |
| One (1) to fifteen (15) days | $250 |
| Sixteen (16) to thirty (30) days | $500 |
| More than thirty (30) days | $800 |

e.  Compliance Inspections. If Magnolia Affiliates fail to perform or, if performed, fail to document a Site Inspection, as required by Paragraph 20, or otherwise fail to comply with any portion of Paragraph 20, they shall pay a stipulated penalty as follows:

| Period of Noncompliance: | Penalty Per Violation Per Day: |
| --- | --- |
| One (1) to fifteen (15) days | $250 |
| More than fifteen (15) days | $500 |

f.    Reporting. If Magnolia Affiliates fail to timely submit required Quarterly Reports that conform to the requirements of Paragraphs 32.b, 35 and 36, or fails to notify EPA in the event of a violation or anticipated violation of the Consent Decree, in accordance with Paragraph 33, they shall pay a stipulated penalty as follows

| Period of Noncompliance: | Penalty Per Violation Per Day: |
|---|---|
| One (1) to fifteen (15) days | $250 |
| More than fifteen (15) days | $500 |

44.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

45.    Magnolia Affiliates shall pay any stipulated penalty within thirty (30) Days of receiving the United States' written demand.

46.    The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

47.    Stipulated penalties shall continue to accrue as provided in Paragraph 44, during any Dispute Resolution, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Magnolia Affiliates shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Magnolia Affiliates shall pay all accrued penalties determined by the Court to be owing, together with interest, within ninety (90) Days of receiving the Court's decision or order, except as provided in Subparagraph 47.c, below.

c.     If any Party appeals the District Court's decision, Magnolia Affiliates shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

48.     Magnolia Affiliates shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 13, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

49.     If Magnolia Affiliates fail to pay stipulated penalties according to the terms of this Consent Decree, Magnolia Affiliates shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due. Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Magnolia Affiliates' failure to pay any stipulated penalties.

50.     The payment of penalties and interest, if any, shall not alter in any way Magnolia Affiliates' obligation to complete the performance of the requirements of this Consent Decree.

51.     <u>Non-Exclusivity of Remedy.</u> Stipulated penalties are not the United States' exclusive remedy for violations of this Consent Decree. Subject to the provisions of Section XII (Effect of Settlement/Reservation of Rights), the United States expressly reserves the right to

seek any other relief it deems appropriate for Magnolia Affiliates' violation of this Decree or applicable law, including but not limited to an action against any Magnolia Affiliate for statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt. However, the amount of any statutory penalty assessed for a violation of this Consent Decree shall be reduced by an amount equal to the amount of any stipulated penalty assessed and paid pursuant to this Consent Decree.

## IX. FORCE MAJEURE

52.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Magnolia Affiliates, of any entity controlled by Magnolia Affiliates, and of Magnolia Affiliates' contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Magnolia Affiliates' best efforts to fulfill the obligation. The requirement that Magnolia Affiliates exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized. "Force majeure" does not include Magnolia Affiliates' financial inability to perform any obligation under this Consent Decree.

53.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Magnolia Affiliates shall provide notice orally or by electronic or facsimile transmission to EPA as set forth in Section XIV (Notices), within seventy-two (72) hours of when Magnolia Affiliates first knew that the event might cause a delay. Within seven (7) days thereafter, Magnolia Affiliates shall provide in writing to EPA an explanation and description of the reasons for the delay; the

anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Magnolia Affiliates' rationale for attributing such delay to a force majeure event if they intend to assert such a claim; and a statement as to whether, in the opinion of Magnolia Affiliates, such event may cause or contribute to an endangerment to public health, welfare or the environment. Magnolia Affiliates shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Magnolia Affiliates from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Magnolia Affiliates shall be deemed to know of any circumstance of which Magnolia Affiliates, any entity controlled by Magnolia Affiliates, or Magnolia Affiliates' contractors knew or should have known.

54.      If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Magnolia Affiliates in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

55.      If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Magnolia Affiliates in writing of its decision.

56.      If Magnolia Affiliates elect to invoke the dispute resolution procedures set forth in Section X (Dispute Resolution), they shall do so no later than fifteen (15) days after receipt of

EPA's notice. In any such proceeding, Magnolia Affiliates shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Magnolia Affiliates complied with the requirements of Paragraphs 52 and 53. If Magnolia Affiliates carry this burden, the delay at issue shall be deemed not to be a violation by Magnolia Affiliates of the affected obligation of this Consent Decree identified to EPA and the Court.

## X.    DISPUTE RESOLUTION

57.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. Magnolia Affiliates' failure to seek resolution of a dispute under this Section shall preclude Magnolia Affiliates from raising any such issue as a defense to an action by the United States to enforce any obligation of Magnolia Affiliates arising under this Decree.

58.    Informal Dispute Resolution. Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when Magnolia Affiliates send the United States a written Notice of Dispute. Such Notice of Dispute shall state clearly the matter in dispute. The period of informal negotiations shall not exceed twenty (20) Days from the date the dispute arises, unless that period is modified by written agreement. If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless,

within fifteen (15) Days after the conclusion of the informal negotiation period, Magnolia Affiliates invoke formal dispute resolution procedures as set forth below.

59.     Formal Dispute Resolution. Magnolia Affiliates shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Magnolia Affiliates' position and any supporting documentation relied upon by Magnolia Affiliates.

60.     The United States shall serve its Statement of Position within forty-five (45) Days of receipt of Magnolia Affiliates' Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Magnolia Affiliates, unless Magnolia Affiliates file a motion for judicial review of the dispute in accordance with the following Paragraph.

61.     Magnolia Affiliates may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIV (Notices), a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Magnolia Affiliates' position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

62.    The United States shall respond to Magnolia Affiliates' motion within the time period allowed by the Local Rules of this Court. Magnolia Affiliates may file a reply memorandum, to the extent permitted by the Local Rules.

63.    Standard of Review

   a.    Disputes Concerning Matters Accorded Record Review. Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 59 pertaining to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Magnolia Affiliates shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

   b.    Other Disputes. Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 59, Magnolia Affiliates shall bear the burden of demonstrating that its position complies with this Consent Decree.

64.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Magnolia Affiliates under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance,

but payment shall be stayed pending resolution of the dispute as provided in Paragraph 47. If

Magnolia Affiliates do not prevail on the disputed issue, stipulated penalties shall be assessed

and paid as provided in Section VIII (Stipulated Penalties).

## XI.    INFORMATION COLLECTION AND RETENTION

65.    <u>Right of Entry</u>. The United States and its representatives, including attorneys,

contractors, and consultants, shall have the right of entry into any site or facility covered by this

Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

b.    verify any data or information submitted to the United States in
accordance with the terms of this Consent Decree;

c.    obtain samples and, upon request, splits of any samples taken by Magnolia
Affiliates or their representatives, contractors, or consultants;

d.    obtain documentary evidence, including photographs and similar data; and

e.    assess Magnolia Affiliates' compliance with this Consent Decree.

66.    Upon request, Magnolia Affiliates shall provide EPA or its authorized

representatives splits of any samples taken by Magnolia Affiliates. Upon request, EPA shall

provide Defendants splits of any samples taken by EPA.

67.    Until five (5) years after the termination of this Consent Decree, Magnolia

Affiliates shall retain, and shall instruct their contractors and agents to preserve, all non-identical

copies of all documents, records, or other information (including documents, records, or other

information in electronic form) in their or their contractors' or agents' possession or control, or

that come into their or their contractors' or agents' possession or control, and that relate in any

manner to Magnolia Affiliates' performance of their obligations under this Consent Decree. This

information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures. At any time during this information-retention period, upon request by the United States, Magnolia Affiliates shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

68.     At the conclusion of the information-retention period provided in the preceding Paragraph, Magnolia Affiliates shall notify the United States at least ninety (90) Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Magnolia Affiliates shall deliver any such documents, records, or other information to EPA. Magnolia Affiliates may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law. If Magnolia Affiliates assert such a privilege, they shall provide the following: (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by Magnolia Affiliates. However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

69.     Magnolia Affiliates may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Magnolia Affiliates seek to protect as CBI, Magnolia Affiliates shall follow the procedures set forth in 40 C.F.R. Part 2.

70.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws,

regulations, or permits, nor does it limit or affect any duty or obligation of Magnolia Affiliates to maintain documents, records, or other information imposed by applicable federal or State laws, regulations, or permits.

XII.    EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

71.    This Consent Decree resolves all civil claims of the United States for the violations alleged in the Complaint filed in this action through the date of lodging, including all alleged violations of Applicable Permits for the Site issued by the State pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, and all alleged violations of CWA Section 301, 33 U.S.C. § 1311, for the discharge of dredged or fill material into waters of the United States without permits issued pursuant to CWA Section 404, 33 U.S.C. § 1344, at the Site.

72.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions. The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, any of Magnolia Affiliates' Site/Additional Sites, whether related to the violations addressed in this Consent Decree or otherwise.

73.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Site and/or Additional Sites, Magnolia Affiliates shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims

raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 71.

74.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations. Magnolia Affiliates are responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, and permits; and Magnolia Affiliates' compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Magnolia Affiliates' compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, 33 U.S.C. § 1251 *et seq.*, or with any other provisions of federal, state, or local laws, regulations, or permits.

75.     This Consent Decree does not limit or affect the rights of Magnolia Affiliates or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Magnolia Affiliates, except as otherwise provided by law.

76.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XIII.   COSTS

77.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Magnolia Affiliates.

## XIV. NOTICES

78.    Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

As to the United States by email:    EESCaseManagement.ENRD@usdoj.gov
Re: DJ # 90-5-1-1-11410

As to the United States by mail:    EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-5-1-1-11410

As to EPA:    Michele Wetherington
Associate Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303
Telephone: (404) 562-9613
E-mail: Wetherington.Michele@epa.gov

Ahmad Dromgoole
Stormwater & Residuals Enforcement Section
NPDES Permitting & Enforcement Branch
U.S. Environmental Protection Agency, Region 4
Telephone: (404) 562-9212
E-mail: Dromgoole.Ahmad@epa.gov

As to Magnolia Affiliates:    Aaron Sullivan
P.O. Box 1550
Evans, GA 30809
Telephone: (706) 830-1888
E-mail: aaronwsullivan@att.net

79.    Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

80.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV.    EFFECTIVE DATE

81.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVI.    RETENTION OF JURISDICTION

82.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections X and XVII, or effectuating or enforcing compliance with the terms of this Decree.

## XVII. MODIFICATION

83.    The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

84.    Any disputes concerning modification of this Decree shall be resolved pursuant to Section X (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 63, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVIII. TERMINATION

85.     After Magnolia Affiliates have completed the requirements of Section VI (Compliance Requirements), have thereafter maintained continuous satisfactory compliance with this Consent Decree and Magnolia Affiliates' Applicable Permits for a period of five (5) years, and have paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Magnolia Affiliates may serve upon the United States a Request for Termination, stating that Magnolia Affiliates have satisfied those requirements, together with all necessary supporting documentation.

86.     Following receipt by the United States of Magnolia Affiliates' Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Magnolia Affiliates have satisfactorily complied with the requirements for termination of this Consent Decree. If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

87.     If the United States does not agree that the Decree may be terminated, Magnolia Affiliates may invoke Dispute Resolution under Section X. However, Magnolia Affiliates shall not seek Dispute Resolution of any dispute regarding termination until sixty (60) Days after service of its Request for Termination.

## XIX.   PUBLIC PARTICIPATION

88.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with 28 C.F.R. § 50.7. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is

inappropriate, improper, or inadequate. Magnolia Affiliates consent to entry of this Consent Decree without further notice and agree not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Magnolia Affiliates in writing that it no longer supports entry of the Decree.

## XX.  SIGNATORIES/SERVICE

89.    Each undersigned representative of each Magnolia Affiliates and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

90.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Magnolia Affiliates agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons. Magnolia Affiliates need not file an answer to the complaint in this action unless or until the Court expressly declines to enter this Consent Decree.

## XXI.  INTEGRATION

91.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Decree, the Parties acknowledge that there are no representations,

agreements, or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XXII. FINAL JUDGMENT

92.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Magnolia Affiliates pursuant to Fed. R. Civ. P. 54 and 58.

## XXIII. APPENDICES

93.     The following Appendices are attached to and part of this Consent Decree:

"Appendix A" is the Site Plat Maps;

"Appendix B" is the Site Inspection Form.

Dated and entered this *19th* day of *November*, 2018

UNITED STATES DISTRICT JUDGE

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Magnolia Valley Plantation, et al.*, subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA:

_____
Date

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice


2|1|18
Date

RACHAEL AMY KAMONS
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 514-5260
Facsimile: (202) 616-2427
E-mail: Rachael.Kamons@usdoj.gov


March 1, 2018
Date

PAUL CIRINO
Trial Attorney
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044-7611
Telephone: (202) 514-1542
Facsimile: (202) 514-8865
E-mail: paul.cirino@usdoj.gov

51

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Magnolia Valley Plantation, et al.,* subject to the public notice and comment provisions of 28 C.F.R. § 50.7:


FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):


BOBBY L. CHRISTINE
UNITED STATES ATTORNEY


March 1, 2018
Date

JONATHAN A. PORTER
Assistant United States Attorney
Georgia Bar No. 725457
U.S. Attorney's Office
Post Office Box 8970
Savannah, Georgia 31412
Telephone: (912) 652-4422
Email: Jonathan.Porter@usdoj.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Magnolia Valley Plantation, et al.*, subject to the public notice and comment provisions of 28 C.F.R. § 50.7:


FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):


3·21·18

_____

Date

SUZANNE RUBINI
Acting Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
Telephone: (404) 562-9535


Of Counsel:
MICHELE WETHERINGTON
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 4
61 Forsyth Street, S.W.
Atlanta, Georgia 30303
Telephone: (404) 562-9613
E-mail: wetherington.michele@epa.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Magnolia Valley Plantation, et al.,* subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR PLAINTIFF UNITED STATES OF AMERICA (Continued):

2 / 26 / 18
Date

_____
MARK POLLINS, Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, D.C.

Of Counsel:
ANDREW CHERRY
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460
Telephone: (202) 564-2589
E-mail: Cherry.Andrew@epa.gov

KRISTIN BUTERBAUGH
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460
Telephone: (202) 564-4479
E-mail: Buterbaugh.Kristin@epa.gov

WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Magnolia Valley Plantation, et al.,* subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR DEFENDANTS MAGNOLIA VALLEY PLANTATION, LLC, MAGNOLIA VALLEY, LLC, MAGNOLIA HILLS, LLC:

2/13/18
Date

Aaron W. Sullivan, Jr.
P.O. Box 1550
Evans, GA 30809
Telephone: (706) 830-1888
E-mail: aaronwsullivan@att.net


WE HEREBY CONSENT to the entry of this Consent Decree in *United States v. Magnolia Valley Plantation, et al.,* subject to the public notice and comment provisions of 28 C.F.R. § 50.7:

FOR AARON W. SULLIVAN, JR. AND MAGNOLIA AFFILIATES:

2/13/18
Date

Aaron W. Sullivan, Jr.
P.O. Box 1550
Evans, GA 30809
Telephone: (706) 830-1888
E-mail: aaronwsullivan@att.net